UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MONICA RAMOS,

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. CV 12-9107 PJW

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he: (1) rejected her testimony and the testimony of lay witnesses; (2) determined her residual functional capacity; and (3) discounted the opinion of treating doctors and a social worker. For the reasons explained below, the Court concludes that the ALJ did not err.

## II. STATEMENT OF FACTS

Plaintiff was born on May 31, 1990. (Administrative Record ("AR") 139.) On December 2, 2008, she applied for SSI, alleging that

she had been unable to work since May 31, 2008, due to autism/ Asperger's Syndrome, mental illness, obesity, anxiety, depression, and hypertension. (AR 139-42, 163, 194.) After her application was denied initially and on reconsideration, she requested and was granted a hearing before an ALJ. (AR 119-21.) In May 2011, she appeared with counsel at the hearing and testified. (AR 63-93.) On June 24, 2011, the ALJ issued a decision, finding that she was not disabled. (AR 18-25.) Plaintiff appealed to the Appeals Council, which denied her request for review. (AR 1-3.) This appeal followed.

## II. ANALYSIS

### A. The Credibility Findings

#### i. Plaintiff's Testimony

Plaintiff claimed that her cognitive and emotional/psychiatric problems precluded her from working. The ALJ determined that these claims were inconsistent with the fact that she was not receiving psychiatric treatment or psychotropic medications; attended college; had been assessed a GAF of 60; and was generally able to communicate. (AR 23.) Plaintiff argues that the ALJ erred. For the following reasons, the Court concludes that, though the ALJ did err as to some of these points, the overall credibility finding is supported by substantial evidence and will be affirmed.

ALJs are tasked with judging the credibility of witnesses, including the claimants. In making these determinations, they may employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject a claimant's

testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ concluded that Plaintiff was not as impaired as she claimed because she was not receiving treatment for her condition, i.e., psychiatric treatment and/or psychotropic medications. (AR 23.) Generally speaking, a claimant's failure to obtain treatment is a valid reason to question her claim of disabling impairment. *See Flaten v. Sec'y, Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (holding ALJ entitled to question claims of impairment where claimant fails to obtain medical care to treat it). The problem with the ALJ's reliance on this factor, however, is that there is no evidence in the record that either psychiatric treatment or psychotropic medications were called for.

As to psychiatric treatment, there is evidence that Plaintiff received counseling services from a therapist for her shyness, which seemed to help her overcome it to some extent. (AR 242-55.) Plaintiff attempted to obtain additional counseling services from a county mental healthcare provider but was turned away because her condition did not meet its guidelines. (AR 316.) The record does not contain any evidence that any other psychiatric treatment was appropriate for her condition and that she chose not to pursue it.

As to psychotropic medications, the Court was unable to find any entries in the medical records where a doctor prescribed psychotropic medication for Plaintiff and she refused to take it. Plaintiff argues that the reason that she was not taking psychotropic medications was because they are not used to treat her condition. In the absence of any evidence to contradict this claim, the Court accepts it. Further,

even assuming, arguendo, that alternate treatment was indicated, the Court is hard pressed to conclude that Plaintiff should have recognized this fact and sought out that treatment. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). For these reasons, the Court does not agree that Plaintiff's failure to obtain psychiatric treatment undermines her claim that she is disabled.

The ALJ also relied on the fact that Plaintiff's daily activities suggested greater abilities than she admitted. (AR 23.) The record on this issue is mixed. Plaintiff was taking art and computer classes at a local college and had been for three years when she testified at the hearing. (AR 74.) Presumably, attending college required greater ability than Plaintiff admitted to, even assuming that it was a community college. But, as to Plaintiff's other daily activities listed by the ALJ as a reason to question her claims, for example, watching T.V., playing on the computer, and performing household chores, the Court would agree with Plaintiff that these activities, at least as she and her family described them, were not so interactive and complex as to undermine her claims of disabling social isolation and cognitive impairment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding watching television is an activity that is "so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding ALJ errs in failing to explain how ability to perform daily activities translated into the ability to perform work).

The ALJ also questioned the veracity of Plaintiff's claims of impairment because she had been assessed a GAF score of 60 by two doctors. (AR 23, 270, 287.) A GAF score of 60 means that, in the

doctor's view, the patient is suffering from only moderate symptoms.[1] In fact, a score of 61, just one point higher, would indicate that the patient had only "some mild symptoms." *See* DSM-IV at 34. GAF scores may be considered by an ALJ in making credibility determinations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (approving ALJ's use of GAF score to question claimant's claim of disabling pain.) As such, the ALJ did not err in relying on the GAF scores to conclude that Plaintiff was not as impaired as she claimed.

Finally, the ALJ relied on the fact that Plaintiff was able to communicate in complete sentences during a doctor's examination to conclude that she was not being truthful. (AR 23.) This justification is somewhat perplexing. Plaintiff was not portraying herself as someone who was unable to speak in complete sentences. (AR 182-89.) In fact, she testified in complete sentences at the administrative hearing. (AR 67-78.) She was, instead, claiming that her cognitive and emotional deficits made it impossible for her to work, particularly with other people. Thus, the ALJ's reliance on the fact that she could speak in complete sentences to find that she was exaggerating her claims was not warranted.

In the end, the Court finds that, of the four reasons cited by the ALJ for questioning Plaintiff's credibility, two are supported by the record--the fact that she was going to college part time and the fact that two doctors assessed her GAF at 60--and two are not. In

---

[1] A score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000).

this situation, the Court must decide whether the valid reasons alone are enough to uphold the ALJ's finding. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding court must evaluate ALJ's credibility finding under harmless error standard where some of ALJ's reasons for rejecting credibility are rejected and some are upheld). Here, the Court concludes that they are. Plaintiff's ability to attend Oxnard College, even part time, over a three-year period suggests that she is more capable of interacting with others and performing mental tasks than she admitted. Presumably, she was required to interact with other students and instructors at the college. She was also, presumably, required to perform at a relatively advanced cognitive level to pass her classes over a three-year period. Likewise, the fact that two doctors determined that her GAF was 60 supports the ALJ's finding that Plaintiff's claims of disabling mental/emotional impairment are exaggerated. For these reasons, the ALJ's credibility finding will not be disturbed.

ii. The Lay Witnesses

Plaintiff complains that the ALJ erred when he rejected the testimony of Plaintiff's mother, Celia Ramos, and her step-grandfather, Ray Tafoya. Mrs. Ramos testified that she had to remind Plaintiff to take a bath and to take out the trash. (AR 86.) Mr. Tafoya testified that, in a hypothetical work situation, Plaintiff would find it hard to remember multiple tasks and would get anxious and depressed if put under pressure. (AR 79-80.) The Court finds that the ALJ did not err in rejecting this testimony.

Lay testimony is competent evidence and an ALJ is required to consider it in determining whether a claimant is disabled. *See Nguyen*, 100 F.3d at 1467 ("Lay testimony as to a claimant's *symptoms*

is competent evidence which the Secretary must take into account."). The ALJ may, however, discount lay testimony for reasons that are germane to the witness's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, the ALJ rejected the mother and step-grandfather's testimony because it was inconsistent with and not supported by the "objective documentary evidence, including records from treating and examining physicians." (AR 23.) This reason was germane to both witnesses and is supported by some of the medical evidence. As such, it is a sufficient basis to reject the testimony. *See Lewis*, 236 F.3d at 511.

B. The Treating Sources

Plaintiff contends that the ALJ erred in discounting the opinions of her treating physicians, Dr. Andrei Bobrow and Dr. Gwen Huffer, and of her mental health therapist, Zandra Martinez. For the following reasons, the Court disagrees.

Dr. Huffer treated Plaintiff when she was a minor. On February 27, 2009, Dr. Huffer examined Plaintiff, who was 18 years old at the time, for the purpose of writing a disability report. (AR 265-66.) Dr. Huffer noted that Plaintiff could do household chores, her understanding was good, her short- and long-term memory was normal, and she was capable of sustained concentration and persistent effort. (AR 266.) The doctor also noted that she had deficits in social interaction and communication, opining that Plaintiff would succeed at

a job with a "relaxed atmosphere with a supportive supervisor, [that] require[s] little social interaction and take[s] advantage of her careful nature and willingness to please." (AR 266.)

The ALJ noted Dr. Huffer's report in his decision, without explicitly accepting or rejecting it. (AR 22.) In his residual functional capacity determination, however, the ALJ found that Plaintiff would be limited to simple, routine tasks with limited public and co-worker contact. (AR 21.) In the Court's view, the ALJ's assessment reasonably accounted for the deficits in social interaction and communication noted by Dr. Huffer. And, because the assessment was consistent with the Dr. Huffer's opinion, the ALJ was not required to provide reasons for rejecting it. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (holding, where "[t]he record demonstrates that the ALJ accepted [the treating physician's] opinion," the ALJ was not required to articulate "clear and convincing reasons" for rejecting it).

Plaintiff also complains that the ALJ did not provide any legitimate reasons for rejecting the opinion of treating physician Andrei Bobrow, who opined in a May 18, 2011 "To Whom It May Concern" letter that Plaintiff "is not able to compete for and maintain gainful employment in the mainstream workforce." (AR 328.) The ALJ rejected Dr. Bobrow's opinion because it was conclusory and not supported by accompanying documentation. (AR 24.) This is a legitimate reason for rejecting a treating doctor's opinion. *See Thomas*, 278 F.3d at 957 (holding ALJ not required to accept treating physician's opinion that is brief, conclusory, and inadequately supported by clinical findings); *see also* SSR 96-5p (explaining medical opinion that claimant is disabled, "even when offered by a treating source, can

never be entitled to controlling weight or given special significance”).

Plaintiff argues that the ALJ’s finding is both vague and inaccurate, pointing out that Dr. Bobrow’s treatment records “support a finding that [Plaintiff] has disabling mental limitations.” (Joint Stip. at 21.) The Court disagrees. Although Plaintiff treated with Dr. Bobrow for several years, the visits were almost exclusively for physical complaints. The fact that Dr. Bobrow referenced Plaintiff’s visits with a therapist in passing in some of the chart notes is not adequate support for his conclusion that Plaintiff was completely unable to work as a result of her mental/emotional impairments. (AR 257, 329, 331.)

Plaintiff contends that the ALJ also erred in rejecting the opinion of her therapist, Zandra Martinez, who saw Plaintiff six times between November 2008 and February 2009. (AR 249-54.) In May 2011, Ms. Martinez completed a medical source statement in which she opined that Plaintiff’s impairments would cause her to be absent from work more than three times a month and that Plaintiff was extremely limited in her ability to remember work-like procedures; carry out very short and simple instructions; work in coordination with others without distraction; make simple work-related decisions; complete a normal workday and workweek without interruptions from her symptoms; perform at a consistent pace; respond to changes in her work setting; and deal with work stress; set realistic goals or make independent plans. (AR 354-56.)

The ALJ noted Ms. Martinez’s May 2011 statement but gave it little weight because her report of “multiple marked to extreme limitations” was inconsistent with the GAF score of 55 that she

recorded for Plaintiff on the same form. (AR 22-23, 24.) The ALJ was allowed to reject Ms. Martinez's opinion for this reason because Martinez was not a doctor and the reason was germane to her opinion. 20 C.F.R. § 416.913(d) (2011); Social Security Ruling 06-03p; *see also Thomas v. Astrue*, 2009 WL 151488, at *3 (C.D. Cal. Jan. 21, 2009) ("[T]he reports of licensed clinical social workers are considered 'other sources' of evidence, not evidence from an 'acceptable medical source.'"); *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (upholding ALJ's rejection of social worker's opinion for reasons germane to the witness). As such, the ALJ did not err here.[2]

C. <u>The Residual Functional Capacity Determination</u>

As a corollary to her previous arguments, Plaintiff argues that the ALJ failed to properly assess her residual functional capacity. Because the Court has concluded that the ALJ did not err in rejecting Dr. Bobrow's and therapist Martinez's opinions, to the extent that Plaintiff's arguments rest on those opinions, they, too, are rejected. The ALJ was not required to include in the residual functional

---

[2] Plaintiff suggests that Ms. Martinez and Dr. Huffer collaborated closely in their treatment of Plaintiff, inviting the Court to view Martinez's treatment as an extension of the doctor's. (Joint Stip. at 22, 24.) *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (holding nurse practitioner opinion could be viewed as an acceptable medical opinion where she acted so "closely under the supervision" of the treating physician that her opinion should be "properly considered as part of" the treating opinion). The record shows, however, that Ms. Martinez referred Plaintiff to Dr. Huffer for the specific purpose of completing a Social Security disability form. (AR 244, 265.) There is no evidence that Ms. Martinez worked with or under the supervision of Dr. Huffer. That being the case, the ALJ was not required to grant the same deference to her opinion that he would have granted to a doctor's opinion.

capacity findings the limitations suggested by these two because the record did not support them and the ALJ rejected them.

Plaintiff contends that the ALJ did not include the limitations found by state agency reviewing psychiatrist R.E. Brooks or consulting psychologist Margaret Donohue, despite the fact that the ALJ professed to accept their views. (Joint Stip. at 6-7.) The record does not support this contention, either.

Dr. Donohue concluded that Plaintiff would likely have difficulty dealing with the general public, coworkers, or supervisors and might also have difficulty interacting with other people. (AR 270.) She also concluded that Plaintiff could perform simple and detailed tasks. (AR 271.) Those conclusions are consistent with the ALJ's residual functional capacity determination, which limited Plaintiff to simple, routine tasks, with limited public and co-worker contact. (AR 21.)

Dr. Brooks reviewed the medical records and found that Plaintiff would be moderately limited in her activities of daily living and in maintaining concentration, persistence, or pace and markedly limited in maintaining social functioning. (AR 285.) He also concluded that Plaintiff could "manage a simple entry level work routine with limited social interaction required." (AR 287.) This conclusion was also consistent with the ALJ's findings. *See also Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (affirming ALJ's finding claimant could perform full range of light work, despite reviewing physician's determination claimant had moderate limitation in ability to maintain concentration, persistence, and pace).

Finally, Plaintiff contends that the ALJ erred in failing to include in the residual functional capacity determination limitations caused by her hypertension, obesity, kidney disease, and allergic

rhinitis. (Joint Stip. at 10-12.) This argument is without merit. The ALJ noted Plaintiff's history of hypertension, as reported by examining physician Ursula Taylor, as well as her kidney disease, obesity, and rhinitis. (AR 23.) He fully credited Dr. Taylor's opinion that Plaintiff would not be physically limited in the workplace. (AR 24, 275-76.) Plaintiff has not pointed to any evidence of functional limitation that the ALJ overlooked. As such, this argument, too, is rejected. *See Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005) (affirming ALJ's finding claimant not disabled where claimant failed to set forth evidence of functional limitations).

IV. CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: January 27, 2014

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\RAMOS, 9107\Memo Opinion.wpd